IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHARON SAUNDERS, | ) | No. CV-F-04-5924 REC LJO |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| vs. | ) | MOTION TO DISMISS |
| | ) | PLAINTIFF'S FIRST AMENDED |
| DETECTIVE CYNTHIA KNIGHT, | ) | COMPLAINT AND DIRECTING |
| et al., | ) | PLAINTIFF TO FILE A SECOND |
| | ) | AMENDED COMPLAINT. |
| Defendants. | ) | |
| | ) | (Doc. 63) |
| _____ | ) | |

On Monday, December 19, 2005, the Court heard Defendants'

Motion to Dismiss Plaintiff's First Amended Complaint (the

"Motion").  Upon due consideration of the written and oral

arguments of the parties and the record herein, the Court GRANTS

the Motion in part and DENIES it in part as set forth herein.

**I.  Factual Background**

Sharon Saunders ("Plaintiff") was involved in an

organization called the "Constitutional Colleagues," which is an

"educational organization based on the lawful principles of the

1

1   Federal Constitution of the United States of America."[1]  1st Am.

2   Comp. ("FAC") at 5:15-18.  On January 5, 1999, Fresno County

3   Sheriff's Department law enforcement officers entered a meeting

4   room at the Fashion Fair Mall where a meeting of the

5   Constitutional Colleagues (hereinafter "CC") was taking place.

6   The officers executed a search warrant and Plaintiff was

7   arrested.  Plaintiff's vehicle and residence in Clovis were also

8   searched pursuant to a warrant.  Plaintiff alleges that personal

9   property was seized from her person, vehicle, and home.

10      Plaintiff was taken into custody on a charge of violating

11  California Penal Code section 327 ("Section 327").  Section 327

12  makes an endless chain scheme unlawful.  An "endless chain" is

13  defined as:

14          [A]ny scheme for the disposal or distribution
            of property whereby a participant pays a
15          valuable consideration for the chance to
            receive compensation for introducing one or
16          more additional persons into participation in
            the scheme or for the chance to receive
17          compensation when a person introduced by the

18  _____

19      [1]This passage appears in the FAC entirely in capital letters,
    as does the majority of the FAC and Plaintiff's Opposition.  The
20  Court has reproduced all such passages in conventional form for
    easier reading.  Defendants ask the court to order Plaintiff to
21  "use lower-case font where appropriate."  Mot. at 2:27-28 n. 1.
    Defendants do not cite, nor is the Court is aware of, any authority
22  that prohibits the use of all capital letters.  That said, and in
    the interest of clarity, the Court would ask Plaintiffs in the
23  future to forebear from using all capital letters in their
    pleadings.  See Bryan A. Garner, Legal Writing in Plain English 126
24  (2001) ("The problem with using all capitals is that individual
    characters lose their distinctive features:  the strokes that go
25  above and below a line of text. . . .  Capital letters, by
    contrast, are designed to be uniform in size.  And when they come
26  in battalions, the eye must strain a little — or a lot — to make
    out words and sentences . . . .")

2

1      participant introduces a new participant.
2      Compensation, as used in this section, does
       not mean or include payment based upon sales
       made to persons who are not participants in
3      the scheme and who are not purchasing in
       order to participate in the scheme.
4

5   Cal. Pen. Code § 327.  Endless chains are more commonly known as

6   pyramid schemes.  In addition to Plaintiff Sharon Saunders, three

7   other people — Blaine William, Peter Plitt and Jerry Thorstad —

8   were charged with violating Section 327.

9      On July 7, 2003, a preliminary hearing on the criminal

10  charge was held in Fresno County Superior Court.  Judge Nunez

11  dismissed the charges as to all defendants, finding that there

12  was no probable cause to believe that a crime had been committed.

13  **II.  Procedural Background**

14     On July 2, 2004, Plaintiff and her husband Merlin Saunders

15  filed their initial complaint alleging various causes of action

16  under 42 U.S.C. section 1983 ("Section 1983") and various state

17  law tort theories.  The initial complaint named as defendants the

18  City of Fresno, the County of Fresno (including the Board of

19  Supervisors), members of the District Attorney's Office[2] ("DA

20  Defendants"), and members of the Fresno County Sheriff's

21  Department[3] ("Sheriff Defendants").  On May 3, 2005, the Court

22  ─────────────────

23     [2] These defendants were District Attorney Edward Hunt, Deputy
    District Attorney Bob Ellis, and Deputy District Attorney John
24  Savrnoch.

25     [3] These defendants were Detective Cynthia Knight, Sheriff
    Richard Pierce, Detective Mark Chapman, Sergeant Dadian, Detective
26  Earl Richardson, Detective Janice Rasmussen, Detective Ken Bowden,
    Deputy Dale Bauman, Deputy Mark Severson, Deputy Patrick Hanson,

3

1  issued its Order Granting Defendants' Motion to Dismiss (Doc.

2  51), which dismissed all claims against the City of Fresno and

3  the DA Defendants and the state claims against the Sheriff

4  Defendants.

5   On September 13, 2005, Plaintiff, proceeding pro se, filed

6  her First Amended Complaint ("FAC") alleging four causes of

7  action under Section 1983.  The claims in the FAC are based on

8  the the First, Fourth, Fifth, and Fourteenth Amendments to the

9  United States Constitution, respectively.  All claims are against

10 the Sheriff Defendants and the County of Fresno (collectively

11 "Defendants").  On September 28, 2005, Defendants filed this

12 Motion.

13 **III. Discussion**

14  **A.   Legal Standard**

15  Dismissal of a complaint pursuant to Rule 12(b)(6) is proper

16 if "it appears beyond doubt that the plaintiff can prove no set

17 of facts in support of his claim which would entitle him to

18 relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2

19 L. Ed. 2d 80 (1957).  In testing the sufficiency of a complaint

20 against a Rule 12(b)(6) challenge, a court must "accept all

21 material allegations in the complaint as true and construe them

22 in the light most favorable to the plaintiff."  N. Star Int'l v.

23 Arizona Corp. Comm'n, 720 F.2d 578, 580 (9th Cir. 1983).

24 The Court need not, however, "accept legal conclusions cast in

25 ───────────────

26 and Deputy Juan Espinoza.

1   the form of factual allegations if those conclusions cannot

2   reasonably be drawn from the facts alleged." <u>Clegg v. Cult</u>

3   <u>Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994).

4        A complaint may be dismissed as a matter of law if there is

5   a lack of a cognizable legal theory or if there are insufficient

6   facts alleged under a cognizable legal theory. <u>Balistreri v.</u>

7   <u>Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  The

8   Court must determine whether or not it appears to a certainty

9   under existing law that no relief can be granted under any set of

10   facts that might be proved in support of a plaintiff's claims.

11   <u>De La Crux v. Tormey</u>, 582 F.2d 45, 48 (9th Cir. 1978), <u>cert.</u>

12   <u>denied</u>, 441 U.S. 965, 99 S. Ct. 2416, 60 L. Ed. 2d 1072 (1979).

13   The Court may consider the complaint itself along with any

14   material properly considered as part of the complaint.

15   <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542,

16   1555 n. 19 (9th Cir. 1989).  Where a court considers documents

17   beyond the face of the complaint in the context of a motion to

18   dismiss for failure to state a claim, it should resolve any

19   ambiguities in the nonmoving party's favor.  <u>Int'l Audiotext</u>

20   <u>Network, Inc. v. AT&T</u>, 62 F.3d 69, 72 (2d Cir. 1995).  Where the

21   complaint fails to state a claim on which relief can be granted,

22   leave to amend "shall be freely given when justice so requires."

23   Fed. R. Civ. P. 15(a); <u>Allen v. Beverly Hills</u>, 911 F.2d 367, 373

24   (9th Cir. 1990).

25   //

26   //

1      **B.    Qualified Immunity**

2          Defendants move the Court to dismiss all claims on the basis

3      that qualified immunity precludes liability.  Plaintiff argues

4      that dismissal based on qualified immunity is inappropriate at

5      this stage because it is an affirmative defense.  A court can

6      dismiss a complaint under Rule 12(b)(6) when an affirmative

7      defense appears on the face of the complaint.  <u>Leveto v. Lapina</u>,

8      258 F.3d 156, 161 (3d Cir. 2001).  Therefore, qualified immunity

9      "'will be upheld on a 12(b)(6) motion only when the immunity is

10     established on the face of the complaint.'"  <u>Id.</u> (quoting <u>Hafley

11     v. Lohman</u>, 90 F.3d 264, 266 (8th Cir. 1996)).  Plaintiffs are not

12     required to anticipate defenses and to "plead around all

13     potential defenses."  <u>Xechem, Inc. v. Bristol-Myers Squibb Co.</u>,

14     372 F.3d 899, 901 (7th Cir. 2004).  A plaintiff may however

15     "plea[d] itself out of court" and be subject to a Rule 12(b)(6)

16     motion if it admits all of the elements of an impenetrable

17     defense.  <u>Id.</u>

18         An official who violates a plaintiff's constitutional right

19     is entitled to qualified immunity if the right was not "clearly

20     established."  <u>Kennedy v. Ridgefield City</u>, 411 F.3d 1134, 1141

21     (9th Cir. 2005) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121

22     S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).  A right is clearly

23     established where the "contours of the right [are] sufficiently

24     clear that a reasonable official would understand that what he is

25     doing violates that right."  <u>Id.</u> (quoting <u>Saucier</u>, 533 U.S. at

26     201).  To decide whether a right is clearly established, a court

6

should focus on whether a reasonable official would recognize
that his or her conduct violates that right under the
circumstances and in light of the law that existed at that time.
Id. at 1144.  Even if a court decides that the right the official
violated is clearly established, qualified immunity is available
if the official made a reasonable mistake in applying the
relevant legal doctrine.  Id. at 1141-42.

    Defendants argue that all of Plaintiff's claims should be
dismissed because it was not "clearly settled" that the business
scheme Plaintiff operated did not violate Section 327.  Mot. at
5:4-5.  The allegations of Plaintiff's FAC do not describe the
business scheme in which Plaintiff engaged.  Defendants support
their qualified immunity argument with reference to the exhibits
Plaintiff attached to the FAC, including Ms. Knight's Statement
of Probable Cause (the "Knight Statement" or the "Statement")
(FAC Ex. 1) and a transcript of criminal proceedings in the
Fresno County Superior Court (FAC Ex. 7).

    Defendants contend that "Knight's statement also establishes
that [CC]'s scheme included a separate inducement for members of
the public to join and to part with $125:  the chance to receive
compensation under the pyramid structure, when additional persons
within the participant's 'downline' also pay $125 to join."  Mot.
at 5:16-19.  Defendants point to several portions of the
Statement where Ms. Knight cites evidence that CC violated
Section 327.  Mot. at 5:21-28 n. 4.  Defendant also cites Judge
Nunez's statement that "[t]he evidence certainly has some

7

1 hallmarks of a pyramid scheme." Mot. at 6:1-2 (quoting FAC Ex.

2 7). Defendants correctly contend that the Court can consider

3 exhibits to the FAC in the context of a motion to dismiss for

4 failure to state a claim. <u>Hal Roach Studios</u>, 896 F.2d at 1555 n.

5 19. On a motion to dismiss, the Court construes these documents

6 in a light most favorable to Plaintiff. <u>See</u> <u>Int'l Audiotext</u>, 62

7 F.3d at 72.

8     Where a plaintiff attaches documents and relies on their

9 contents to form the basis of a claim, dismissal is appropriate

10 if the document negates the claim. <u>Thompson v. Ill. Dep't of</u>

11 <u>Prof'l Regulation</u>, 300 F.3d 750, 754 (7th Cir. 2002). In

12 <u>Thompson</u>, the employee plaintiff claimed that he was transferred

13 and later removed from his position in retaliation for exercising

14 First Amendment rights. <u>Id.</u> at 753. The employee attached to

15 the complaint a document describing the duties of his position in

16 order to support his claim that he was demoted when he was

17 transferred. <u>Id.</u> at 754. The court considered the job

18 description to dismiss the claim, holding that the employment

19 actions were justified because, based solely on the court's

20 reading of the attached description, employee's position was a

21 "policymaking" position. <u>Id.</u> at 757-58. By attaching the job

22 description to show a proposition necessary to his claim — that

23 he was demoted — the employee thereby asserted that it was "true

24 and correct" for the purpose of establishing the employer's

25 decisive affirmative defense. <u>Id.</u> at 758.

26     The passages in the exhibits to the FAC that Defendants cite

1  to support their qualified immunity claim are distinguishable

2  from the exhibit in Thompson.  Here, Plaintiff has not relied on

3  the passages she attached to the FAC as a necessary part of her

4  claims.  Plaintiff is not required to plead facts that show that

5  a qualified immunity defense fails.  See Xechem, 372 F.3d at 901.

6  Plaintiff does not rely on the Knight Statement in order to

7  establish the nature of CC's business scheme.  If Plaintiff had

8  attached the Statement for the purpose of pleading details of the

9  scheme, under Thompson the Statement would control over contrary

10 allegations and could provide a basis for dismissal on the

11 grounds of qualified immunity.  In fact, Plaintiff disputes the

12 evidence Ms. Knight relies on and the conclusions she makes.

13 Because Plaintiff has not alleged the details of CC's conduct, or

14 otherwise based her claims on the Statement, she is not bound to

15 the Statement's details.  Plaintiff can conceivably prove a set

16 of facts that show that Ms. Knight's characterization of CC's

17 conduct is incorrect and that qualified immunity does not apply.

18      Nor does Plaintiff rely on Judge Nunez's statement that the

19 case against Plaintiff had "some hallmarks of a pyramid scheme."

20 None of Plaintiff's claims require her to allege the manner in

21 which the judge in the criminal matter characterized the case

22 against her.  Consequently, her attachment of a document

23 containing that language does not amount to an assertion that the

24 judge's characterization is true.  Furthermore, the focus in a

25 qualified immunity inquiry is based on how a reasonable official

26 would construe Plaintiff's conduct.  Judge Nunez's opinion

1  regarding CC's scheme does not establish that no set of facts
2  could establish that a reasonable official would come to a
3  different conclusion.

4      The Court declines at this stage to infer from the documents
5  Plaintiff attached to the FAC the nature of the CC business
6  scheme.  This is because the facts Defendants point to in those
7  documents are not analogous to allegations in Plaintiff's FAC.
8  Instead, they are statements of third parties, the contents of
9  which Plaintiff disputes.  Because the details of Plaintiff and
10  CC's allegedly illegal conduct are not apparent from the FAC, the
11  Court cannot determine whether Defendants' actions in response to
12  that conduct were contrary to established law.  Accordingly, none
13  of Plaintiff's claims are subject to dismissal on the basis of
14  qualified immunity.[4]

15      **C.    First Amendment**

16      Count One of Plaintiff's FAC claims that Defendants' actions
17  "violated, denied and deprived Plaintiff Sharon Saunders her
18  Federal Constitutional rights under the First Amendment of the
19  Federal Constitution to freedom of assembly, freedom of
20  association and freedom to contract . . . ."  FAC at 30:19-25.

21      **1.    Freedom of Association**

22      Defendants claim that Plaintiff fails to state a claim based
23  on the right of expressive association under the three-part test

24  _____

25      [4]Because qualified immunity is not a ground to dismiss the
   FAC, the Court need not at this stage decide whether the doctrine
   of res judicata precludes Defendants from arguing that qualified
26  immunity bars Plaintiff's claims.

1   set forth in <u>Boy Scouts of America v. Dale</u>, 530 U.S. 640 648-56,

2   120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000).  In <u>Dale</u>, the Court's

3   first step was to consider whether the group making the claim

4   engaged in expressive association.  <u>Id.</u> at 648.  Second, the

5   Court decided whether the alleged governmental action

6   significantly affected the group's ability to advocate public or

7   private viewpoints.  <u>Id.</u> at 653.  Finally, the Court balanced the

8   governmental interest in the action against the burden on the

9   associational expression to determine whether the burden was

10  justified in light of the governmental interest.  <u>Id.</u> at 656.  To

11  state a claim for violation of its expressive association rights,

12  Plaintiff must satisfy all three prongs.  <u>See</u> <u>Dale</u>, 530 U.S. at

13  656.

14      Defendants argue that Plaintiff cannot satisfy the second

15  prong because she and CC were free to sell the tapes, so long as

16  they did not use a pyramid-style compensation system.  CC and

17  Plaintiff, Defendants allege, were still free to "continue to

18  associate, discuss the constitution and sell tapes."  Mot. at

19  9:5-6.  In support, Defendants cite the Knight Statement, which

20  indicates that Defendants acted only "to preclude pyramid

21  compensation, not the selling of tapes."  Mot. at 9:3-5.  The

22  Court does not find allegations in the FAC that establish

23  Plaintiffs engaged in pyramid-style compensation.  Nor does the

24  FAC establish that Defendants' adverse treatment of CC or

25  Plaintiff would have ceased if Plaintiff had changed its

26  compensation scheme.  For the reasons discussed above, the Court

11

1  will not accept as true Ms. Knight's statements attached to the

2  FAC in deciding a motion to dismiss.  See Thompson, 300 F.3d at

3  754.

4      Plaintiff alleges that Defendants "caused the permanent

5  loss, and destruction of the lawful organization known as

6  Constitutional Colleagues which Plaintiff was an active member

7  of, which loss and destruction directly caused denial,

8  deprivation, violation of said Plaintiffs 1st Amendment Federal

9  Constitutional rights to freedom of assembly, freedom of

10 association, and freedom to contract, . . . ."  FAC at 26:12-21.

11 Plaintiff claims Defendants were motivated not to prevent pyramid

12 compensation, but rather to "cause the removal or termination of

13 Fresno County Sheriffs Deputy Peter Plit," a co-defendant with

14 Plaintiff in the criminal case in Fresno Superior Court.  FAC at

15 27:10-17.

16     Plaintiff's claim seems to be that Defendants' wrongful

17 actions not only harmed CC but caused it to cease to exist

18 completely.  Because CC was destroyed by Defendants' actions,

19 Plaintiff and the group lost all ability to meet and advocate

20 their viewpoints.  Plaintiff alleges that, at a meeting on

21 January 5, 1999, Defendants used "force of arms, verbal and

22 physical threats and coercive intimidation" to arrest her and

23 other members of CC and seize personal property.  FAC at 5:8-6:7.

24 Thus, on at least that occasion, Plaintiff was prevented from

25 meeting with CC.  Furthermore, Plaintiff claims that during the

26 four-and-a-half years before the Fresno Superior Court dismissed

12

the charges, she was "under custody of the court and was subject to constant and ongoing threat of being seized and arrested, and subject to ongoing searches at will of said Defendants, and discretion of the court . . . ."  FAC at 22:4-10.

The Court interprets the FAC to allege that until the criminal court dismissed charges against Plaintiff, she was forbidden to meet with the CC and engage in the group's expressive activities.  Viewing these allegations in the light most favorable to Plaintiff, Defendants' actions deprived her of her ability to express herself through the meetings with CC.  See Healy v. James, 408 U.S. 169, 184, 92 S. Ct. 2338, 33 L. Ed. 2d 266 (1972) (placing burden on university to justify denying student club the right to meet on campus).

Defendants also argue that Plaintiff cannot satisfy the third prong because Defendants have an interest in the prevention of financial crimes and in enforcing the laws of the state.  This argument presents no reason to dismiss Plaintiff's claim, at this stage, because the FAC does not establish that Plaintiff or CC have violated state law.  Viewing the FAC and its attachments in the light most favorable to Plaintiff, Plaintiff has stated a claim for a violation of her rights of expressive association.

## 2.   Freedom of Assembly

Defendants argue that Plaintiff does not state a claim for violation of her rights to freedom of assembly because Defendants acted only to prevent improper pyramid compensation.  Defendants argue that Plaintiff and CC were free to meet for any purpose,

13

1  provided they did not commit a crime.  Defendants point out that

2  the First Amendment only protects lawful, not illegal, assembly,

3  citing in support De Jonge v. Oregon, 299 U.S. 353, 365, 57 S.

4  Ct. 255, 81 L. Ed. 278 (1937).

5      Plaintiff's allegations do not merit dismissal on the basis

6  Defendants proffer.  Plaintiff does not merely allege that

7  Defendants wrongfully prevented her and CC from engaging in

8  pyramid compensation.  To the contrary, Plaintiff alleges that

9  Defendants were motivated by a desire to retaliate against Mr.

10  Plit, not to enforce Section 327.  FAC at 27:10-17.  She alleges

11  that Defendants therefore unconstitutionally targeted CC, a

12  "lawful and legitimate" organization that was "lawfully selling a

13  product."  FAC at 19:22-28.  Defendants allegedly destroyed CC

14  through arrests, seizure of property, and the ongoing threat of

15  arrest and seizure.  FAC at 5:8-6:7, 22:4-10.  At this stage, the

16  Court will not accept as true statements in documents attached to

17  the FAC on which Plaintiff does not rely to state a claim.

18  Thompson, 300 F.3d at 754.  The Knight Statement cannot establish

19  that Defendants' actions were justified by law or that their

20  actions toward CC would have ceased if the alleged pyramid

21  compensation was absent.  Viewing these allegations in the light

22  most favorable to the Plaintiff, she has stated a claim for

23  violation of her rights to freedom of assembly.

24         **3.   Freedom to Contract**

25      Plaintiff claims that Defendants' activities violated her

26  "rights under the First Amendment of the Federal Constitution to

14

1   . . . freedom to contract . . . ."  FAC at 30:21-25.  The Court

2   is unaware of any "freedom to contract" under the First

3   Amendment.  The Supreme Court formerly recognized an absolute

4   right to freedom of contract under the Due Process Clause of the

5   Fourteenth Amendment.  See Lochner v. New York, 198 U.S. 45, 25

6   S. Ct. 539, 49 L. Ed. 937 (1905); but see W. Coast Hotel Co. v.

7   Parrish, 300 U.S. 379, 391 (1937) ("The Constitution does not

8   speak of freedom of contract.").  The Contracts Clause of the

9   United States Constitution provides that "no state shall enter

10  into any . . . Law impairing the Obligation of Contracts." U.S.

11  Const. Art. I, § 10.  The threshold inquiry is "whether the state

12  law has, in fact, operated as a substantial impairment of a

13  contractual relationship."  Allied Structural Steel Co. v.

14  Spannaus, 438 U.S. 234, 244, 98 S. Ct. 2716, 57 L. Ed. 2d 727

15  (1978).  Plaintiff does not allege that any state law has

16  affected a contractual obligation.

17      In her Opposition, Plaintiff characterized her "freedom to

18  contract" argument as an argument that Defendants' actions

19  amounted to an illegal restriction on commercial speech.

20  Plaintiff contends that the inducement CC used to attract

21  customers "is both a 'commercial solicitation' and 'contract'"

22  protected by the First Amendment.  Opp'n at 32:13-21.

23  Plaintiff's erroneous characterization of her claim as one for

24  violation of "freedom to contract" does not require dismissal of

25  a claim for violation of her commercial speech rights.  Haddock,

26  777 F.2d at 464 (holding that "a complaint should not be

15

1  dismissed if it states a claim under any legal theory, even if

2  the plaintiff erroneously relies on a different legal theory").

3      Restrictions on commercial speech are subject to

4  intermediate scrutiny.  <u>Cent. Hudson Gas & Elec. Corp. v. Pub.</u>

5  <u>Serv. Comm. of N.Y.</u>, 447 U.S. 557, 566, 100 S. Ct. 2343, 65 L.

6  Ed. 2d 341 (1980).  In <u>Central Hudson</u>, the Supreme Court

7  developed a four-part analysis for commercial speech:

8          At the outset, we must determine whether the
           expression is protected by the First
9          Amendment.  For commercial speech to come
           within that provision, it at least must
10         concern lawful activity and not be
           misleading.  Next, we ask whether the
11         asserted governmental interest is
           substantial.  If both inquiries yield
12         positive answers, we must determine whether
           the regulation directly advances the
13         governmental interest asserted, and whether
           it is not more extensive than is necessary to
14         serve that interest.

15 <u>Id.</u>

16      It does not appear from the face of the FAC that Plaintiff's

17 speech was unlawful.  Nor is there any indication that

18 Plaintiff's marketing scheme was misleading.  Viewing the

19 allegations of the FAC in a light most favorable to Plaintiff,

20 the marketing activities connected to CC were protected by the

21 First Amendment.

22      Plaintiff argues that Defendants prevented her from meeting

23 with CC and from engaging in certain marketing activities.

24 Defendants allegedly imposed a restriction on her speech by

25 arresting her when she engaged in the protected speech at the CC

26 meeting, by confiscating CC materials, and by threatening to

16

1  arrest her or seize property if she were to engage in similar

2  activities in the future.  The government potentially has an

3  interest in prohibiting certain harmful speech that, for example,

4  comprises an illegal pyramid scheme, or that otherwise victimizes

5  consumers.  The face of the FAC does not reveal that Plaintiff's

6  speech was in any way harmful.  Thus, the Court cannot determine

7  on this motion to dismiss that Defendants' actions against CC or

8  Plaintiff served any important interest.  Plaintiff has stated a

9  claim for violation of her commercial speech rights.

10      Accordingly, Defendants' motion to dismiss is DENIED with

11  respect to Plaintiff's Count One.

12      **D.   The County**

13      In its Order Granting Defendants' Motion to Dismiss (Doc.

14  51), the Court held that municipalities may not be held liable

15  for the unconstitutional acts of their employees absent a "direct

16  causal link between a municipal policy or custom and the alleged

17  constitutional deprivation."  <u>Monell v. Dep't of Soc. Serv. of</u>

18  <u>N.Y.</u>, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 611 (1978).

19  Plaintiff included "County of Fresno California" as a defendant

20  in her FAC.  FAC at 1:17.  Defendants argue that the FAC fails to

21  allege that the County of Fresno has engaged in conduct that

22  satisfies <u>Monell</u>.  In her Opposition, Plaintiff states, "As to

23  the naming of the COUNTY OF FRESNO in the 1st Amended Complaint,

24  this act was inadvertent on Plaintiff['s] part, and Plaintiff

25  will request that the Court disregard and Strike out the

26  Count[y's] Name from the Complaint."  Opp'n at 5:26-6:4

17

1  Accordingly, all claims against the County of Fresno are

2  DISMISSED WITH PREJUDICE.[5]

3      **E.   Delay of the Preliminary Hearing**

4      Plaintiff claims that Defendants unreasonably delayed a

5  preliminary hearing on the charge that she violated Section 327.

6  The FAC does not contain any allegations specifying actions that

7  the Defendants took to delay the preliminary hearing.  Plaintiff

8  merely states:  "Defendants had a clear and known duty under the

9  Federal Constitution under the 4th, 5th, 9th, and 14th Amendments

10 thereto, to refrain from delaying the required preliminary

11 hearing . . . .  Said Defendants caused the delay in question,

12 and are therefore liable . . . ."  FAC at 22:25-23:8.  At oral

13 argument, in response to the Court's questioning, Plaintiff

14 merely reiterated her claim that the delay was unreasonably long.

15 She did not identify any action by the Defendants remaining in

16 this action that caused the delay of Plaintiff's hearing.

17     The government has the duty to ensure a prompt inquiry into

18 criminal charges.  <u>Barker v. Wingo</u>, 407 U.S. 514, 527, 92 S. Ct.

19 2182, 33 L. Ed. 2d 101 (1972).  The prosecutor, the court and its

20 staff, and even defense counsel may bear the responsibility to

21 expedite proceedings in criminal cases.  <u>Hodges v. United States</u>,

22 408 F.2d 543, 552 (8th Cir. 1969); <u>Rheuark v. Shaw</u>, 547 F.2d

23 1257, 1258-59 (5th Cir. 1977) (reversing dismissal of a complaint

24

25       [5]The Court need not decide whether to dismiss the claims for
   punitive damages against County of Fresno, as all claims against it
26 have been dismissed.

seeking monetary and injunctive relief against stenographer and
court reporter alleged to have failed to comply with plaintiff's
request for a trial court transcript).  Following the dismissal
of the County of Fresno, all remaining Defendants appear to be
members of the Fresno County Sheriff's Department.  The Court is
unaware of, and the Plaintiff fails to cite, any authority that
creates an affirmative duty on the part of law enforcement
officials to cause a preliminary hearing to occur expeditiously.
Plaintiff does not allege any facts that indicate Defendants
acted in a manner inconsistent with a speedy initial hearing.
Cf. Doggett v. United States, 505 U.S. 647, 652-53, 112 S. Ct.
2686, 120 L. Ed. 2d 520 (1992) (government investigators violated
Sixth Amendment where for six years they "made no serious effort
to test their progressively more questionable assumption that
[defendant] was living abroad, and, had they done so, they could
have found him within minutes").

Plaintiff has failed to plead facts that establish that
Defendants caused a delay in Plaintiff's hearing.  Accordingly,
the FAC is DISMISSED to the extent it incorporates Plaintiff's
claim for relief for "Unreasonable Delay from Arrest to
Preliminary Hearing in Violation of the 4th Amendment of the
Federal Constitution"[6] (FAC at 21:17-23:8).  Leave to file a

---

[6]It is unclear under which cause of action Plaintiff makes
this claim.  The best candidate is Count Two, which seeks recovery
under the Fourth Amendment, because Plaintiff characterizes the
delay as a violation of her Fourth Amendment rights.  The text of
Count Two, however, does not itself appear to state a claim for the
delay of Plaintiff's hearing.

1  second amended complaint is GRANTED.

2

3       **ACCORDINGLY:**

4  1.  All claims against Defendant County of Fresno are DISMISSED

5      WITH PREJUDICE.

6  2.  Plaintiff's claim for relief for "Unreasonable Delay from

7      Arrest to Preliminary Hearing in Violation of the 4th

8      Amendment of the Federal Constitution" is DISMISSED against

9      all Defendants.

10 3.  Defendants' motion to dismiss is DENIED with respect to all

11     other claims.

12 4.  Plaintiff shall file a second amended complaint within 30

13     days of the issuance of this order.  Failure to comply will

14     result in dismissal of the action.

15

16 IT IS SO ORDERED.

17 **Dated:  January 25, 2006**              **/s/ Robert E. Coyle**
   810ha4                          UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

                            20